UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. DREW BYELICK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>RYVYL INC. (f/k/a GREENBOX POS), a Nevada corporation,<br><br>Defendant. | Case No.:  24-cv-01096-GPC-SBC<br><br>**ORDER GRANTING: (1) PLAINTIFF'S REQUESTS FOR JUDICIAL NOTICE, (2) DEFENDANT'S MOTION TO STRIKE, AND (3) DEFENDANT'S MOTION TO DISMISS**<br><br>**[ECF Nos. 9, 13, 18]** |

Before the Court are Plaintiff's request for judicial notice, ECF No. 13, Defendant's ex parte motion to strike, ECF No. 18, and Defendant's motion to dismiss, ECF No. 9.  Defendant did not oppose Plaintiff's request for judicial notice.  Plaintiff opposed the motion to strike, ECF No. 20.  Plaintiff also opposed the motion to dismiss, ECF No. 15, and Defendant filed a reply, ECF No. 16.

For the reasons below, the Court GRANTS the request for judicial notice, GRANTS the motion to strike, and GRANTS the motion to dismiss with leave to amend as to Counts Two, Three, Four, Five, and Six.

# BACKGROUND

In June 2022, Plaintiff Drew Byelick accepted Defendant RYVYL Inc.'s ("Ryvyl") offer to become the company's CFO.  ECF No. 1 ("Compl.") ¶ 55.  Defendant initially reached out to Plaintiff regarding the position via Robert Half, a recruiting firm, in April 2022.  *Id.* ¶ 44.  Plaintiff went through several rounds of interviews with Defendant's executives, *id.* ¶¶ 47, 49, received an offer letter in May 2022, *id.* ¶ 51; ECF No. 1-2 at 58-67, and visited Defendant's San Diego campus for an in-person meeting, Compl. ¶ 54, before accepting the offer, *id.* ¶ 55.  Plaintiff relocated from Texas to San Diego, California to become Defendant's CFO.  *Id.* ¶ 15.

Defendant's offer letter to Plaintiff contains several key terms.  *See* ECF No. 1-2 at 68-71.  While the letter states that it "is an offer of employment not an employment contract," *id.* at 70, it later states that "if you accept this offer, the terms described in this letter ***will be the terms of employment***," *id.* (emphasis added).  Because Plaintiff ultimately accepted the offer, Compl. ¶ 55, the terms of the letter became the terms of his employment.  Generally, the offer outlines Plaintiff's salary, bonuses, benefits, and start date.  ECF No. 1-2 at 69-70.  The letter also states that Plaintiff's "employment with the Company will be 'at will' and may be terminated by either [Plaintiff] or the Company at any time without notice."  *Id.* at 70.

Plaintiff alleges that Defendant made numerous misrepresentations to him throughout the hiring process.  Plaintiff alleges that Defendant misrepresented that its prior SEC filings and 2021 annual report were accurate and complied with generally accepted accounting principles ("GAAP"), *id.* ¶ 16(B), that Defendant "had adequate internal financial controls," *id.* ¶ 16(C), and that Plaintiff "would have free and unfettered access to all documents, records, and persons" required to perform his job as CFO, *id.* ¶ 16(D).  Plaintiff also alleges that between May and June 2022, Defendant misrepresented

to him that it would hire at least two financial assistants to assist in Plaintiff's duties as CFO.  *Id.* at ¶ 18(F).

Plaintiff alleges that Defendant misrepresented and omitted this information in the hiring process for several improper reasons.  *Id.* ¶ 18.  For instance, Plaintiff alleges that Defendant knew that its existing accounting software "lacked adequate internal financial controls; . . . was not integrated; . . . [and] was woefully inadequate."  *Id.* ¶ 18(A).  Plaintiff alleges that the inadequate software directly led to inaccurate financial statements.  *Id.*  Plaintiff also states that Defendant's SEC filings failed to account for nearly $6 million in unreported "insider share trading transactions" in violation of GAAP and SEC rules and regulations, and that Defendant was aware of these transactions.  *Id.* at ¶ 18(B).  Plaintiff further claims that Defendant was aware of the PCAOB's inspection of its previous auditor, BF Borgers, and that the "inspection identified multiple material deficiencies and departures from GAAP," but that Defendant failed to disclose this to Plaintiff.  *Id.* at ¶ 18(C)-(D); *see also* ECF No. 1-2 at 13-37.  In sum, Plaintiff essentially alleges that Defendant knowingly made numerous misrepresentations and omissions to him, and that these misrepresentations and omissions played a key role in his decision to relocate to San Diego, California to become Defendant's CFO.  *Id.* ¶ 22.

In January 2023, Defendant's new auditor, Simon & Edwards, reported that Defendant's 2021 "financial statements were so replete with material misrepresentations and omissions that such statements could no longer be relied upon."  *Id.* ¶ 59.  Defendant filed a Form 8-K with the SEC disclosing to the public that the 2021 financial statements were no longer reliable and would be restated.  ECF No. 1-2 at 3-4.  Upon learning of the 2021 financial statements' inaccuracies, Plaintiff recommended to Defendant's CEO and Board of Directors that each "each and every 'adjusting entry' identified . . . be restated to properly account for every such transaction according to GAAP," but Defendant allegedly refused to cooperate with these efforts.  Compl. ¶ 60.  Because Defendant

would not cooperate with Plaintiff's recommended remedial efforts, "Plaintiff was left with no choice but to resign . . ., because Plaintiff could not and would not certify" that any existing or proposed financial statements were accurate and reliable. *Id.* ¶ 61. Plaintiff feared that remaining as Defendant's CFO "would likely subject [him] to future liability." *Id.* Accordingly, Plaintiff resigned. *Id.*; ECF No. 1-2 at 53-57.

Defendant's disclosure of inaccuracies in its financial statements and subsequent restatement of numerous financial statements resulted in a separate securities fraud class action lawsuit. *See Cullen v. RYVYL Inc.*, 2024 WL 4536471 (S.D. Cal. Oct. 21, 2024). Byelick was initially named as a Defendant in *Cullen* because he was Ryvyl's CFO during certain relevant periods. *Id.* at *2 n.3. However, the claims against Byelick were dismissed with prejudice. *Id.* Byelick subsequently filed the instant lawsuit against Ryvyl.

## REQUESTS FOR JUDICIAL NOTICE

Plaintiff requests that the Court take judicial notice of (1) several of Defendant's SEC filings (Exhibits 1-2, 4-7) and (2) a Public Company Accounting Oversight Board ("PCAOB") Inspection Report of Ryvyl's former auditor, BF Borgers (Exhibit 3). ECF No. 13 at 3-4; *see* ECF Nos. 13-1 and 13-2 (Exhibits).

A court may take judicial notice of a fact or document when it "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2).

## I. **Exhibits 1-2, 4-7: SEC Filings**

Plaintiff requests that the Court take judicial notice of various SEC filings, including a Form 10-K (Exhibit 1), multiple Form 8-Ks (Exhibits 2, 4, 6, and 7), and a form 10-Q (Exhibit 5). ECF No. 13 at 3-4; *see* ECF Nos. 13-1 and 13-2 (Exhibits). Defendant does not oppose this request. SEC filings are a matter of public record and therefore are the proper subject of judicial notice. *See Hammitt v. Lumber Liquidators,*

1  *Inc.*, 19 F. Supp. 3d 989, 1004 (S.D. Cal. 2014); *Dreiling v. Am. Exp. Co.*, 458 F.3d 942,

2  946 n.2 (9th Cir. 2006); *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp.

3  3d 1328, 1349 (C.D. Cal. 2014).  The Court therefore GRANTS Defendants' request for

4  judicial notice as to Exhibits 1, 2, 4, 5, 6, and 7.  ECF No. 13.

5  **II.    Exhibit 3: PCAOB Inspection Report of BF Borgers**

6    Plaintiff also requests judicial notice of a PCAOB Inspection Report of

7  Defendant's former auditor, BF Borgers ("Inspection Report").  *See* ECF No. 13-1 at 12-

8  36.  When ruling on a Rule 12(b)(6) motion, documents attached to the complaint and

9  incorporated by reference are treated as part of the complaint.  *In re NVIDIA Corp. Sec.*

10  *Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).  Plaintiff attaches the Inspection Report to

11  the Complaint and references it extensively throughout,  Compl. ¶¶ 3, 6, 9, 12, 18(C),

12  18(D), 42, and thus it is incorporated by reference to the Complaint.  *Khoja v. Orexigen*

13  *Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  The Court will thus consider

14  Exhibit 3 in deciding the motion to dismiss.

15    Accordingly, Plaintiff's request for judicial notice of Exhibits 1 through 7 is

16  GRANTED.  ECF Nos. 13, 13-1, 13-2.

17  **MOTION TO STRIKE**

18    Defendant moves ex parte to strike Plaintiff's Declaration, ECF No. 15-1, in

19  Support of his Opposition to Defendant's motion to dismiss.[1]  ECF No. 18-1.  Courts

20  may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous

21  matter."  Fed. R. Civ. P. 12(f).

22

23

24

25  [1] Plaintiff also attaches two exhibits to his Declaration—Exhibit 8, which is an email
description of the CFO position from a recruiter, ECF No. 15-2 at 1-10, and Exhibit 9,
26  which is the offer letter he received from Defendant, *id.* at 11-14.  As Defendant points
out, these exhibits are already attached to the Complaint.  ECF No. 1-2 at 58-71.
27

28

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation and internal quotation marks omitted). There are three exceptions to this rule. "A court may consider (1) documents attached to the complaint; (2) documents incorporated by reference in the complaint; and (3) matter that is judicially noticeable under Federal Rule of Evidence 201." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060 (N.D. Cal. 2012) (citing *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003)).

Here, Plaintiff's Declaration does not fall within an exception to the general rule against considering material beyond the pleadings. It is not attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice. Nor does Plaintiff argue that it is in his opposition to the motion to strike. *See* ECF No. 20 (absence). Rather, Plaintiff's Declaration repeats some of the Complaint's allegations, *compare* ECF No. 15-1 at 9-10 ¶ 17 *with* Compl. ¶ 61, and even makes new allegations, ECF No. 15-1 at 3 ¶ 3(G) ("I have never participated in or approved either the preparation or filing of any false and/or misleading SEC filing . . ."). Such material cannot properly be considered by the Court at this phase. *See Block Sci., Inc. v. True Diagnostics, Inc.*, 2023 WL 27348, at *4 n.3 (S.D. Cal. Jan. 3, 2023) (striking declaration filed with the plaintiff's opposition to motion to dismiss because it did not fall within any of the exceptions to the rule that a district court may not consider material beyond the pleadings); *cf. Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss") (emphasis in original). The Court

24-cv-01096-GPC-SBC

1  therefore STRIKES Plaintiff's Declaration in support of his opposition to the motion to

2  dismiss, ECF No. 15-1, from the record.[2]

3  ### MOTION TO DISMISS

4  Defendant moves to dismiss each count of the complaint pursuant to Federal Rules

5  of Civil Procedure ("Rule") 12(b)(6) and 8(a).  To survive a motion to dismiss under

6  Rules 12(b)(6) and 8(a), the complaint must "state a claim to relief that is plausible on its

7  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plaintiff must plead

8  sufficient facts to "raise a right to relief above the speculative level," *id.* at 555, and the

9  Court must be able to "draw the reasonable inference that the defendant is liable for the

10  misconduct charged," *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  Further, under Rule

11  8(a)(2), a complaint must "a short and plain statement of the claim showing that the

12

13  _____

14  [2] In opposing the motion to strike, Plaintiff argues that ex parte proceedings are

15  disfavored and that Defendant's motion "fails to identify any necessity, emergency, or
    claim of irreversible damage or injury which would make the entry of an ex parte Order

16  appropriate."  ECF No. 20 at 2-3.  To justify ex parte relief, the moving party must show

17  that their "cause will be irreparably prejudiced if the underlying motion is heard
    according to regular noticed motion procedures" and that they are "without fault in

18  creating the crisis that requires ex parte relief."  *Mission Power Eng'g Co. v. Cont'l Cas.*

19  *Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

20  Defendant filed the motion to strike on November 25, 2024, ECF No. 18—just 17 days
    after Plaintiff filed the declaration which Defendant seeks to strike, ECF No. 15-1.  If the

21  regular noticed motion procedures were followed, the motion to strike would not be heard

22  until December 23, 2023—10 days after the motion to dismiss hearing, ECF No. 12.  *See*
    L.R. 7.1(e)(1) (motion must be filed at least 28 days before the date for which it is

23  noticed).  Thus, following the regular procedures would irreparably prejudice Defendant,

24  as the Court would hear the motion to dismiss and consider the declaration Defendant
    seeks to strike.  Defendant is without fault in creating this timeline; Plaintiff's filing of

25  the declaration amid the motion to dismiss briefing is what led to this series of events.

26  Even if Plaintiff's ex parte motion were improper here, the Court would "act . . . on its

27  own" to strike Plaintiff's Declaration.  Fed. R. Civ. P. 12(f)(1).

28

pleader is entitled to relief[.]"  *Keesee v. Stanislaus County*, 2024 WL 4268071, at *1 (E.D. Cal. Sept. 23, 2024) (internal citation and quotation marks omitted).

On review of a Rule 12(b)(6) motion, the Court accepts all facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff.  *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008).  Although the general rule prohibits the Court from considering extrinsic evidence in reviewing a motion to dismiss, it may consider matters that are incorporated into the complaint by reference and that are properly subject to judicial notice.  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009).  Accordingly, the Court will consider the complaint, its attachments, and Exhibits 1-7, ECF Nos. 13-1 and 13-2, in deciding the motion to dismiss.

## I.   Count One: Fraudulent Inducement of Employment

Plaintiff's Count One is a claim for fraudulent inducement of employment pursuant to Labor Code § 970.  Compl. ¶¶ 64-76.  Labor Code § 970 provides that "[n]o person . . . shall influence, persuade, or engage any person to [relocate] . . . for the purpose of working in any branch of labor, through or by means of knowingly false representations" concerning (a) the kind or character of the work, (b) the length of employment or compensation, (c) the housing conditions relating to the work, or (d) any existing or potential labor disputes in the workplace.

Defendant moves to dismiss this claim because it is barred by the applicable statute of limitations, or, in the alternative, because it fails to state a claim under Rules 12(b)(6) and 9(b).  ECF No. 9-1 at 8-12.  Plaintiff responds that the claims are timely and that, even if they are not, he sufficiently pleads the claims.  ECF No. 15 at 5-10.

Because the statute of limitations presents a threshold issue, the Court will address it first.  The parties disagree over the applicable statute of limitations.  Defendant argues

that California Code of Civil Procedure § 340(a), which provides a one-year limitations period for statutes with civil penalties, is applicable here.  ECF No. 9-1 at 8.  Plaintiff argues that California Code of Civil Procedure § 338(a), which provides a three-year limitations period for statutes providing for liability "other than a penalty or forfeiture," is applicable.  ECF No. 15 at 5.

The Court finds that the applicable limitations period is one year pursuant to California Code of Civil Procedure § 340(a).  Labor Code § 972 provides that violators of § 970 must pay a civil penalty to the aggrieved party.  Thus, Labor Code § 970 falls within the ambit of Code of Civil Procedure § 340(a)'s one-year limitations period because it provides for a civil penalty.  Courts are unanimous in finding that the applicable limitations period for Labor Code § 970 claims is one year.  *See Keenan v. Cox Commc'ns Cal., LLC*, 835 F. App'x 193, 195 (9th Cir. 2020) (unpublished) ("the California Supreme Court would find that the [Labor Code § 970] claim imposes a penalty and is subject to the one-year limitations period"); *Suber*, 2023 WL 8143876, at *5 ("[c]laims for fraudulent inducement to relocate [pursuant to Labor Code § 370] are governed by a one-year statute of limitations"); *O'Malley v. Columbia Cap., LLC*, 2015 WL 13918148, at *3 (C.D. Cal. Sept. 14, 2015) (acknowledging "that the governing statute of limitations for § 970 is one year"); *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1018 (9th Cir. 2000) ("assum[ing] the correctness" of district court's application of one-year limitations period to Section 970 claim).

Plaintiff filed the instant suit on June 25, 2024.  ECF No. 1.  Plaintiff's § 970 claim accrued, at the latest, on March 2, 2023—when he resigned due to the fallout that resulted from the "numerous material misrepresentations."  Compl. ¶ 74.  At this point, Defendant's misrepresentations and omissions which allegedly induced Plaintiff to relocate for employment had already been relied upon by Plaintiff and publicly announced as inaccurate.  Compl. ¶¶ 67-72.  Plaintiff's subsequent disagreement with

9

Defendant and its officers regarding how to respond to the incorrect financial statements is what led him to resign. *Id.* ¶¶ 73-74. Thus, at the time of Plaintiff's resignation, he knew of the alleged fraud and had confronted the Defendant regarding the fraud. His cause of action accrued at this time. *See Lopez v. Booz Allen Hamilton, Inc.*, 2020 WL 7342396, at *3 (E.D. Cal. Dec. 14, 2020) ("discovery of the fraud sets the anchor date for when the one-year limitations period begins to run"); *cf. Suber v. VVP Servs., LLC*, 2023 WL 8143876, at *5 (C.D. Cal. Oct. 25, 2023) ("Plaintiff's claim here would have accrued at least as of her detailed resignation letter, in which she alleges that she details the false representations that induced her move to California"). Accordingly, Plaintiff's § 970 claim is time barred because it was filed more than one year after his cause of accrued. Defendant's motion to dismiss Count One is GRANTED.

## II.  Counts Two and Three: Common Law Fraud Claims

### A. Treatment of "Duplicative Claims"

Defendant argues that Plaintiff's other fraud claims—Counts Two (intentional misrepresentation) and Three (concealment)—must be dismissed because they are duplicative of the untimely Count One. ECF No. 9-1 at 12-13. Plaintiff does not respond to this argument. *See* ECF No. 15 at 5-10 (absence).

In support of its argument, Defendant cites *McBride v. Boughton*, 123 Cal. App. 4th 379 (2004), and *Foulk v. Pacific Coast Roofers Pension Plan*, 2021 WL 1181748 (C.D. Cal. Feb. 16, 2021). Defendant argues that *McBride* stands for the proposition that common law fraud claims that are mere "recitations of a § 970 claim" must rise or fall with § 970 claims. ECF No. 9-1 at 13 (citing *McBride*, 123 Cal. App. 4th at 395). And Defendant argues that the court in *Foulk* dismissed "duplicative common counts because [the] breach of contract claim was time-barred." ECF No. 9-1 at 13 (citing *Foulk*, 2021 WL 1181748, at *2).

1    Upon reviewing *McBride*, *Foulk*, and other cases relying on *McBride*, the Court

2 finds that Defendant's reliance on these cases is misplaced. Both *McBride* and *Foulk*

3 involved common counts. "A common count is not a specific cause of action, however;

4 rather, it is a simplified form of pleading normally used to aver the existence of various

5 forms of monetary indebtedness, including that arising from an alleged duty to make

6 restitution under an assumpsit theory." *McBride*, 123 Cal. App. 4th at 394. "When a

7 common count is used as an alternative way of seeking the same recovery demanded in a

8 specific cause of action, and is based on the same facts, the common count is demurrable

9 if the cause of action is demurrable." *Id.* *McBride* and cases relying on *McBride* deal

10 with a "cause of action framed as a common count for money had and received." *Id.*; *see*

11 *Integrity Med. Prod. Sols., LLC v. Seroclinix Corp.*, 2024 WL 1914361, at *5-6 (S.D.

12 Cal. May 1, 2024) (relying on *McBride* to dismiss "common count for money had and

13 received"); *Pro. Collection Consultants v. Lujan*, 23 Cal. App. 5th 685, 688 (2018)

14 ("alleging a cause of action for common counts"). These "common counts" involve, for

15 instance, situations where a "Defendant became indebted to Plaintiff . . . for work labor,

16 services and materials rendered . . . and for which defendant promised to pay plaintiff."

17 *Foulk*, 2021 WL 1181748, at *1 (internal quotation marks and citation omitted). The

18 common law fraud claims here are not common counts seeking recovery of monies that

19 Defendant has received or are owed to Plaintiff as a debt. In addition, Plaintiff's fraud

20 claims do not seek the same recovery available for a Labor Code § 970 claim, i.e., a civil

21 penalty. *Compare* Cal. Lab. Code § 972 (providing for civil penalties for violations of

22 Labor Code § 970) *with* Compl. ¶¶ 85, 91 (alleging "damages of incidental financial

23 losses, relocation fees and moving costs . . ., as well as non-economic damages, including

24 . . . damage to Plaintiff's professional reputation . . ., and loss of business opportunities").

25 Thus, *McBride* has no application to the Plaintiff's statutory fraud claims.

26

27

28

11

Defendant does not cite any other case law that mandates dismissal of common law fraud claims based on the same facts as statutory claims that are otherwise barred by the statute of limitations. Ultimately, each cause of action has its own statute of limitations determined by the California legislature and the Court is required to identify the limitations period for each cause of action and apply it.  Courts do not have the power to disregard the statute of limitations.  *Brown v. Napa Valley Unified Sch. Dist.*, No. 11-cv-05673–JCS, 2012 WL 4364673, at *6 (N.D. Cal. Sept. 24, 2012) (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.")).  The fact that the claims are duplicative does not, without more, affect the analysis.  In *Russell v. Mamam*, the court recognized:

> With regard to duplicative claims, a party may plead as many separate claims as it can, provided that the claims are pleaded in compliance with Rule 11. . . . To the extent there is overlap in the legal theories [Plaintiff] chooses to pursue in this case, he may maintain them as alternate theories.  Therefore, even assuming the claims are duplicative, there is no basis to dismiss them at this juncture.

2019 WL 13039744, at *4 (N.D. Cal. June 19, 2019).  In this case, Plaintiff has alleged alternate theories regarding fraud employed to induce him to accept employment and relocate to the State of California.  Defendant does not assert that the Labor Code § 972 statute of limitations applies to common law fraud claims.  Counts Two and Three allege common law fraud claims for misrepresentations and concealment.  Under Civil Code § 338(d), fraud claims have a three-year statute of limitations.  *Vera v. REL-BC, LLC*, 66 Cal. App. 5th 57, 65-66 (2021).  To the extent that Plaintiff's cause of action

24-cv-01096-GPC-SBC

accrued on March 2, 2023, when he resigned, Compl. ¶ 74, his Complaint filed on June 25, 2024 is timely.

Accordingly, the Court will proceed to the merits of Plaintiff's common law fraud claims.

**B. Rule 9(b)**

Alternatively, Defendant argues that "Plaintiff's additional fraud-based claims still fail because he fails to plead fraud with the requisite clarity and specificity" under Rule 9(b). ECF No. 9-1 at 13.

Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). To meet this requirement, plaintiffs must allege the "who, what, when, where, and how" of the alleged fraudulent conduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

Omissions claims are also subject to Rule 9(b). *Tapia*, 116 F. Supp. 3d at 1163. Plaintiffs must "describe the content of the omission and where the omitted information should or could have been revealed." *Erickson v. Boston Sci. Corp.*, 846 F. Supp. 2d 1085, 1092 (C.D. Cal. 2011) (internal quotation marks and citation omitted). While the standard is somewhat relaxed for omissions, "it does not eliminate Rule 9(b)'s requirements that the plaintiff plead with particularity all other elements of his claim." *Poston v. Gen. Motors, LLC*, 2024 WL 3558377, at *5 (S.D. Cal. July 22, 2024).

**i. Intentional Misrepresentation**

Count Two is a claim for common law intentional misrepresentation. "The elements of a claim for intentional misrepresentation are (1) a misrepresentation; (2)

knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage." *Cisco Sys., Inc. v. STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)).

Plaintiff alleges a broad group of misrepresentations that occurred in May 2022. Compl. ¶¶ 16-17. Specifically, Plaintiff alleges that Defendant, through its officers, misrepresented (1) the reason for the CFO job opening; (2) the accuracy of its past SEC filings; (3) the adequacy of its internal controls; (4) that Plaintiff would have "unfettered access" to all documents and records; and (5) that Defendant had not misrepresented "the company's prior financial position." *Id.* ¶ 16. He further alleges that Defendant provided "repeated explicit assurances . . . that there were 'no problems'" with its financial statements, *id.* ¶ 18(E), and that Defendant told him that it had already arranged to hire two more financial assistants on his staff, *id.* ¶ 18(F).

But Plaintiff fails to allege who specifically made the alleged misrepresentations to him, on which specific dates these conversations took place, and whether the individuals knew the statements were false. Further, Plaintiff does not allege circumstances that indicate Defendant's intent to induce Plaintiff's reliance with intentional misrepresentations. Rather, Count Two of the Complaint broadly alleges that Defendant, through six of its senior executives and employees, made vague and broad misrepresentations at some point between May and June 2022. *See id.* ¶¶ 78-79. These allegations are not "specific enough to give defendants notice of the particular misconduct." *Semegen*, 780 F.2d at 731. Accordingly, these allegations do not satisfy Rule 9(b)'s heightened pleading standards.

### ii. Fraudulent Concealment

Count Three is a claim for fraudulent concealment. The elements of fraudulent concealment are (1) concealment of a material fact; (2) the defendant owed the plaintiff a duty to disclose; (3) the defendant intended to defraud the plaintiff by concealing the fact;

(4) the plaintiff was unaware of the fact and would have acted differently if she knew had known of the fact; and (5) the plaintiff suffered damages. *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1163 (S.D. Cal. 2015) (citing *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014)).

Plaintiff alleges two broad groups of omissions. First, Plaintiff alleges that Defendant's SEC filings failed to account for nearly $6 million in unreported "insider share trading transactions" in violation of GAAP and SEC rules and regulations, and that Defendant was aware of these transactions, but allegedly concealed them from Plaintiff. *Id.* at ¶ 18(B). Second, Plaintiff alleges that, between May and June 2022, Defendant concealed (1) the inadequacy of its accounting process and internal controls; (2) that its auditor had been inspected by the PCAOB; and (3) the inaccuracy of its past SEC filings. *Id.* ¶ 18(A), (C), (D).

While the Complaint does allege that Defendant failed to disclose certain information to Plaintiff, "[f]raudulent concealment is more than the simple nondisclosure of material facts. . . . [P]laintiffs must point to specific affirmative acts defendants took in hiding, concealing, or covering up the matters complained of." *Poston*, 2024 WL 3558377, at *5 (citing *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1166 (C.D. Cal. 2022)) (cleaned up). Plaintiff does not allege any affirmative acts Defendant took to hide this information from him.

Further, Plaintiff does not identify specific conversations with specific individuals where this information could have been disclosed, nor does he allege that this information was concealed with the intent to defraud him. And while Plaintiff generally points to his hiring and onboarding process as the period during which this information was concealed from him, he does not allege that Defendant had a duty to disclose any of this information during this time. Instead, Count Three of the Complaint broadly alleges that Defendant, through six of its senior executives and employees, concealed a broad collection of

information from him at some point between May and June 2022.  Compl. ¶ 88.

Plaintiff's vague and general allegations are insufficient.  *See Renner v. Bluegreen Corp.*,

2016 WL 10835981, at *4 (C.D. Cal. Aug. 15, 2016) (finding that Plaintiff's "fraudulent

concealment allegations are vague, general, and conclusory," and therefore do not satisfy

Rule 9(b)).  Therefore, Plaintiff fails to state a claim for fraudulent concealment under

Rules 12(b)(6) and 9(b).

Accordingly, the Court GRANTS Defendant's motion to dismiss Counts Two and

Three.[3]

## III.    <u>Count Four: Breach of Contract</u>

To state a claim for breach of contract, Plaintiff must allege "(1) the existence of

the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's

breach, and (4) the resulting damages to the plaintiff."  *Codding v. Pearson Educ., Inc.*,

842 F. App'x 70, 72 (9th Cir. 2021).  Defendant argues that Plaintiff has failed to

adequately allege elements (1), (3), and (4).  ECF No. 9-1 at 13-14.  Plaintiff responds

that he has sufficiently alleged all elements for a breach of contract claim.  ECF No. 15 at

10-11.  Accordingly, the Court will only address whether Plaintiff has alleged elements

(1), (3), and (4).

//

//

---

[3] If granted leave to amend, Plaintiff must narrow the focus of his allegations to pinpoint who made fraudulent misrepresentations or omissions, when these conversations occurred, who he had these conversations with, why information was misrepresented to or concealed from him, and how he relied on the information or absence of information. Plaintiff should also keep Rule 8's requirements in mind: any amended complaint should include "a short and plain statement of the claim[s]," Fed. R. Civ. P. 8(a)(2), and "[e]ach allegation must be simple, concise, and direct,"  Fed. R. Civ. P. 8(d)(1).  More precise and concise allegations would provide Defendant clearer notice of Plaintiff's claims.

**A. Existence of a Contract**

A valid contract "requires parties capable of contracting, their consent, a lawful object, and a sufficient cause or consideration." *J.B.B. Inv. Partners Ltd. V. Fair*, 37 Cal. App. 5th 1, 9 (2019) (citing Cal. Civ. Code § 1550).  Plaintiff argues that he and Defendant "entered into an employment contract on or about August 16, 2022," and that this allegation is sufficient to plead an existing contract.  ECF No. 15 at 10.  Defendant responds that the complaint fails to identify a contract or any of its purported terms, and that to the extent Plaintiff alleges that his offer letter, *see* ECF No. 1-2 at 68-71, this letter did not create a contract between the parties.  ECF No. 9-1 at 13-14.

The parties did in fact enter into an employment contract.  Defendant points out that "[t]he offer letter clearly states that '[t]his letter is an offer of employment, *not an employment contract*." ECF No. 9-1 at 14 (citing ECF No. 1-2 at 70 (emphasis added)).  But Plaintiff then accepted the terms of the offer letter, *see* ECF No. 1-2 at 49-52, which the offer letter expressly invited, *see* ECF No. 1-2 at 70 ("[i]f you accept this offer, the terms described in this letter will be the terms of your employment").  At this point, the terms of the offer letter, which included Plaintiff's compensation, job title, bonus information, and other relevant employment provisions, *see id.* at 68-71, became the terms of the employment contract.  *See Lenk v. Monolithic Power Sys., Inc.*, 2015 WL 7429498, at *4 (N.D. Cal. Nov. 23, 2015) (finding that plaintiff's employment agreement was his job offer, which "has all of the terms included within it, such as his compensation, job title, and bonus information," and which plaintiff signed and accepted).  Because an employment contract involves a lawful object and sufficient consideration (Plaintiff's labor in exchange for wages), Plaintiff has pled the basic elements of a contract.

Defendant makes a brief challenge to the lack of "specificity as to [the contract's] purported terms." ECF No. 9-1 at 13.  But, as the offer letter states, the terms of the letter

1   control.  ECF No. 1-2 at 70.  These terms "supersede[] any previous discussions or

2   offers," and "[a]ny additions to or modifications of these terms must be in writing and

3   signed by" both parties.  *Id.*  Thus, the complaint adequately alleges the terms of the

4   contract, which are clearly outlined in the offer letter.

5         Accordingly, Plaintiff has alleged the existence of a valid employment contract.

6   **B. Breach**

7         Defendant argues that Plaintiff fails to allege what terms of the contract Defendant

8   breached, and that Plaintiff's resignation cannot be considered a breach because his

9   employment was at will.  ECF No. 9-1 at 14.  Plaintiff responds that he has alleged two

10  breaches: first, that Defendant did not give Plaintiff access to its banking records, which

11  blocked him from being able to perform his CFO duties, and second, that Defendant and

12  its officers engaged in financial transactions without Plaintiff's input, which prevented

13  him from being able to comply with SEC and SOX rules and regulations.  ECF No. 15 at

14  11.

15        Plaintiff alleges that Defendant's conduct prevented him from continuing as CFO

16  and left him no choice to resign because he could not certify that any "existing or

17  proposed financial statements" complied with SEC and SOX rules and regulations.

18  Compl. ¶ 100.  But Plaintiff had no contractual right to access Defendant's banking

19  records or to be involved in all financial transactions.  Plaintiff points to no provision in

20  the employment agreement that required Defendant to oblige with such conditions.  *See*

21  ECF No. 1-2 at 68-71 (absence).  And Plaintiff does not allege that these were implied

22  terms of the employment agreement.  Thus, Plaintiff has not properly alleged a breach of

23  any terms of the contract.  *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117

24  (N.D. Cal. 2011) ("a plaintiff must allege the specific provisions in the contract creating

25  the obligation the defendant is said to have breached") (citing *Miron v. Herbalife Int'l,*

26  *Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001)); *see also San Mateo Union Sch. Dist. v. Cnty.*

27

28

24-cv-01096-GPC-SBC

*of San Mateo*, 213 Cal. App. 4th 418, 440 (2013) ("[t]he flaw in plaintiffs' contract action is the lack of any proper allegation of breach of the contract," as they "have not alleged that defendants failed to perform" their contractual duties).

The fact that Plaintiff felt forced to resign as CFO is not a breach of the contract, either, because the employment was at will. *See* ECF No. 1-2 at 70 ("your employment with the Company will be 'at will' and may be terminated . . . at any time without notice"). Any resignation or constructive termination[4] cannot constitute a breach of an at will employment agreement. *See Lenk*, 2015 WL 7429498, at *5 ("the employment agreement unambiguously stated that the employment was at will, and thus any termination 'would not be a violation of the employment agreement'"); *see also Ingram v. Johnson & Johnson*, 4 F. App'x 347, 348 (9th Cir. 2001) ("Ingram's claims for breach of contract . . . fail because the undisputed evidence establishes that Ingram was an at-will employee"); *Soliman v. CVS RX Servs., Inc.*, 570 F. App'x 710, 711 (9th Cir. 2014) (finding that plaintiff failed to allege a claim for breach of contract because terminating an at will employee is not a breach).

The Court will not address whether Plaintiff has adequately alleged damages. Because the Plaintiff has failed to adequately plead a breach, he has failed to state claim for breach of contract. Defendant's motion to dismiss Count Four is GRANTED.

//

//

---

[4] Plaintiff's allegations that he was forced to resign because of the alleged misrepresentations and Defendant's alleged failure to adequately respond to them read as a claim that he was constructively terminated. *See Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1244 (1994) (en banc) ("[c]onstructive discharge occurs when the employer's conduct effectively forces an employee to resign"). Thus, case law regarding the termination of at-will employment is analogous here.

24-cv-01096-GPC-SBC

## IV.  <u>Count Five: Breach of Covenant of Good Faith and Fair Dealing</u>

Plaintiff also brings a claim for a breach of the covenant of good faith and fair dealing under the common law.  Compl. ¶¶ 102-07.  "A claim for breach of the implied covenant of good faith and fair dealing requires the same elements as a claim for breach of contract, except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting."  *Upper Deck Co. v. Flores*, 2022 WL 686318, at *7 (S.D. Cal. Mar. 8, 2022) (quoting *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015)) (cleaned up).  The covenant of good faith and fair dealing, implied by law in all contracts under California law, "prevent[s] one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement or hindering the other party's performance."  *Id.* (citing *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000)).

The alleged breach seems to be the same for both the breach of contract claim and the breach of the covenant of good faith and fair dealing claim.  *See* Compl. ¶¶ 100, 104. Specifically, Plaintiff alleges that the alleged misrepresentations and Defendant's failure to adequately respond to them "left [him] with no choice but to resign."  *Id.*  Defendant argues that this forced resignation cannot be the alleged breach because Plaintiff's employment was at will.  ECF No. 9-1 at 15.

Much like in the breach of contract context, termination of at-will employment cannot be the alleged breach of the covenant of good faith and fair dealing.  In *Guz*, the California Supreme Court rejected the argument "that even if [a plaintiff's] employment was at will, his arbitrary dismissal frustrated his contract benefits and thus violated the implied covenant of good faith and fair dealing."  *Guz*, 24 Cal. 4th at 350.  Similarly, here the Plaintiff cannot argue that his apparent constructive termination constitutes a breach of his at-will employment.  When employment is at will, "no contract term . . . protect[s

Plaintiff] from termination at any time." *Lenk*, 2015 WL 7429498, at *6 (dismissing breach of covenant of good faith and fair dealing claim where the alleged breach was the termination of Plaintiff's at-will employment).

Plaintiff's opposition brief also mentions that Defendant failed to provide Plaintiff with the "promised . . . staffing and funds" to perform his CFO duties, which violated a "condition precedent to the contract." ECF No. 15 at 12; *see also* Compl. ¶ 13 (alleging that Defendant "withheld vital . . . information and staff resources needed for Plaintiff to perform the job as RYVYL's CFO, which intentional deprivations breached Plaintiff's contract"). Defendant summarily responds that Plaintiff has not alleged any contractual benefits which violate the parties' expectations at the time of contracting. ECF No. 16 at 6-7 (citing *Upper Deck*, 2022 WL 686318, at *7).

The covenant of good faith and fair dealing "cannot be endowed with an existence independent of its contractual underpinnings. It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 24 Cal. 4th at 349-50. Plaintiff's argument seeks to impose additional substantive duties on Defendant under the employment agreement. Specifically, Plaintiff argues that he was contractually entitled to certain information and resources which are not provided for in the employment agreement. *See* ECF No. 1-2 at 68-71. This is the precise argument that the California Supreme Court renounced in *Guz*. Further, to the extent Plaintiff believes he was promised such access and resources in the discussions leading up to the agreement, *see, e.g.,* Compl. ¶¶ 18(F)-(G), such allegations are irrelevant because the offer letter states that it contains the terms of employment and "supersedes any previous discussions or offers," ECF No. 1-2 at 70. Any such alleged promises were not part of the contract. Accordingly, Plaintiff has not alleged a breach of the covenant of good faith and fair dealing.

Defendant's motion to dismiss Count Five is GRANTED.

## V.  Count Six: Indemnification Under Nevada Law

Plaintiff's Count Six alleges a violation of a Nevada indemnification statute.  NRS § 78.751(1)(a) provides that corporations shall indemnify officers in defending against civil actions brought against them in their roles as officers of the corporation for "expenses actually and reasonably incurred by the person in connection with defending the action, including, without limitation, attorneys' fees."

Defendant, in a footnote in its motion to dismiss, argues that the Court cannot apply Nevada law as a federal court sitting in diversity.  ECF No. 9-1 at 11 n.3.  In response, Plaintiff filed a choice of law motion arguing that the Court should apply California law to Counts One through Five and Nevada law to Count Six.  *See* ECF No. 14-1 at 7-9.  The parties also briefly discuss whether Plaintiff has adequately pled a claim for indemnification in their papers.  *See* ECF No. 9-1 at 15-16; ECF No. 15 at 13-15.

### A. Application of Nevada Law

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."  *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001) (cleaned up) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  Here, the statute at issue—NRS § 78.751—provides for the existence of Plaintiff's claim.  Therefore, it is clearly substantive.

Defendant, in its reply, argues that Plaintiff cannot "cherry-pick the laws of the state that are most favorable to each of the claims" and that any choice of law analysis would govern *all*, and not some, of Plaintiff's claims.  ECF No. 16 at 7.  But this contention is incorrect.  Choice of law rules are deemed "substantive" for *Erie* purposes, and thus the Court applies California's choice of law rules.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("[t]he conflict of law rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts").  The Ninth Circuit has recognized that, in California, "a separate choice-of-law inquiry

must be made with respect to each issue in the case." *Dalkilic v. Titan Corp.*, 516 F. Supp. 2d 1177, 1187 (S.D. Cal. 2007) (quoting *S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981)); *see also Bartel v. Tokyo Elec. Power Co., Inc.*, 371 F. Supp. 3d 769, 791 (S.D. Cal. 2019) ("where a party raises choice of law issues with regard to more than one cause of action, a separate conflict of laws inquiry must be made with respect to each issue in the case") (cleaned up).  Thus, the Court would need to conduct a separate choice of law inquiry for each individual claim here.

However, the choice of law analysis has not been fully developed by either party. If Plaintiff is requesting this claim-by-claim approach, he must establish why California law applies to Counts One through Five.  But he merely argues that "because California was the location where Plaintiff was to move permanently and work as CFO for Defendant RYVYL, California law . . . should be applied."  ECF No. 14-1 at 7-8; *see also id.* at 2-3, 9.  This analysis is insufficient.  Plaintiff more clearly goes through a choice of law analysis for Count Six, but his analysis regarding the states' interests in having their law applied is underdeveloped.  *See id.* at 8-9.  And because Defendant hangs its hat on the argument that an "issue by issue" analysis is not appropriate, it never delves into a choice of law analysis for any of the claims.  ECF No. 16 at 7-8 (absence).

The Court finds that the choice of law issue is not ripe for decision at this stage of the litigation.  "The question of whether a choice-of-law analysis can be properly conducted at the motion to dismiss stage depends on the individual case." *Czuchaj v. Conair Corp.*, 2014 WL 1664235, at *9 (S.D. Cal. Apr. 18, 2014) (citing *Hamby v. Ohio Nat'l Life Assur. Corp.*, 2012 WL 2568149, at *2 (D. Haw. June 29, 2012)).  Here, because the briefing is insufficient for the Court to engage in a thorough choice of law analysis, it will opt to decide the issue at a later point in the litigation.  *See Czuchaj*, 2014 WL 1664235, at *9 (finding a choice of law determination to be premature at the motion

to dismiss phase because the court had "insufficient briefing to engage in a careful analysis of the differences between the various bodies of law or the interests of the different states"); *Dean v. Colgate-Palmolive Co.*, 2015 WL 3999313, at *11 (C.D. Cal. June 17, 2015) (finding choice of law analysis inappropriate at motion to dismiss stage because Defendant did not provide analysis to support its assertions); *Brazil v. Dole Food Co., Inc.*, 2013 WL 5312418, at *11 (N.D. Cal. Sept. 23, 2013) (same).

Therefore, the Court will decline to make a choice of law determination at this stage and instead consider whether Plaintiff states a claim for relief under NRS 78.751.[5]

### B. Failure to State a Claim

Rule 8(a)(2) requires a complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." "A complaint that feels to meet this standard may be dismissed pursuant to Rule 12(b)(6)." *Shah v. Fandom, Inc.*, --- F. Supp. 3d ----, 2024 WL 4539577, at *2 (N.D. Cal. Oct. 21, 2024). Plaintiff seeks indemnification under NRS 78.751(1)(a), which provides:

> 1. A corporation shall indemnify any person who is a director, officer, employee or agent to the extent that the person is successful on the merits or otherwise in defense of:
>
> (a) Any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, including, without limitation, an action by or in the right of the corporation, by reason of the fact that the person is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise . . .

---

[5] The Court directs the parties to address the choice of law issue more fully if it arises in a future motion to dismiss.

24

against expenses actually and reasonably incurred by the person in connection with defending the action, including, without limitation, attorney's fees.

Defendant argues that the Complaint fails to meet this bar because it alleges no facts to support an indemnification claim under NRS 78.751, fails to identify any specific indemnifiable expenses incurred, and lacks specificity regarding Plaintiff's alleged previous requests for indemnification. ECF No. 9-1 at 16. Plaintiff responds that he successfully defeated claims brought against him as Ryvyl's CFO in *Cullen v. RYVYL Inc.*, No. 23-cv-00185-GPC-SBC (S.D. Cal.); that he subsequently requested indemnification for expenses he incurred, including attorneys' fees; and that Defendant has refused to indemnify him. ECF No. 15 at 14-15; Compl. ¶¶ 113-15.

Plaintiff adequately pleads that he was successful in the defense of a civil action that was brought against him in his role as Defendant's CFO. Compl. ¶ 110-13. However, Plaintiff does not provide a plain statement of "expenses actually and reasonably incurred . . . in connection with defending the action, including, without limitation, attorneys' fees." NRS 78.751(1). Attorneys' fees are the only relevant expenses Plaintiff mentions in the Complaint. *See* Compl. ¶ 114. But, as Defendant points out, Plaintiff was not represented by an attorney in the *Cullen* lawsuit. *See* ECF No. 9-1 at 16 n.4. Plaintiff is not entitled to indemnification for attorneys' fees that he did not incur. And Plaintiff otherwise fails to allege any other expenses that he could be indemnified for under NRS 78.751. *See* Compl. ¶ 114 (absence). Accordingly, the Complaint does not "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Defendant's motion to dismiss Count Six is GRANTED.

//

//

## VI.    Leave to Amend

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401. Here, although Plaintiff does not request leave to amend, the Court recognizes that Counts Two, Three, Four, Five, and Six would benefit from more specific allegations which would cure the deficiencies noted in this order. However, amendment as to Count One would be futile because no further factual allegations could change the fact that this claim is time barred. Accordingly, the Court GRANTS Plaintiff leave to amend Counts Two, Three, Four, Five, and Six.

## CONCLUSION

The Court GRANTS Plaintiff's requests for judicial notice. ECF No. 13. The Court GRANTS Defendant's ex parte motion to strike, ECF No. 18, and therefore STRIKES Plaintiff's Declaration in support of his opposition to the motion to dismiss, ECF No. 15-1, from the record. The Court also GRANTS Defendant's motion to dismiss with leave to amend Counts Two, Three, Four, Five, and Six. Plaintiff is to file an amended complaint **within 30 days of this order**.

**IT IS SO ORDERED.**

Dated:  December 19, 2024

Hon. Gonzalo P. Curiel
United States District Judge

26

24-cv-01096-GPC-SBC